IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

DARRELL PARKS,                    :
                                  :
          Plaintiff               :    CIVIL NO. 1:13-CV-01834
                                  :
     vs.                          :
                                  :
ANDREW EDINGER, et al.,           :    (Judge Rambo)
                                  :
          Defendants              :

## MEMORANDUM

## Background

Plaintiff Darrell Parks, an inmate serving a life sentence for murder imposed by the District of Columbia Superior Court on October 3, 1991,[1] and currently incarcerated at the Federal Correctional Complex, Beaumont, Texas, filed a Bivens-styled complaint on July 10, 2013, along with two motions to proceed in forma pauperis while confined in the Special Management Unit ("SMU") at the United States Penitentiary, Lewisburg, Pennsylvania ("USP-Lewisburg"). Docs. 1, 2 and 3.

In the complaint which is handwritten and consists of 18 pages and more than 71 paragraphs, Parks

_____

1. Doc. 28-1, Exhibit 1, Declaration of Jennifer Knepper.

claims that his rights under the Eighth Amendment were violated when he was exposed to environmental contaminants and provided with inadequate medical and mental health care when housed in the SMU at USP-Lewisburg. Doc. 1. Specifically, he contends that he was subjected to chemical spray in a poorly ventilated cell block which aggravated his asthma and sarcoidosis[2] and that Defendants "should have known" indirect exposure to chemical munitions used when responding to incidents on the cell block posed a threat to his current and future health in violation of his rights under the Eighth Amendment. Id. ¶¶ 12-18.  Parks claims that he has been "totally denied" care for his sarcoidosis. Id. ¶¶ 19-30 and 35-45.  He further contends he suffers from mental

_____

2.  Sarcoidosis "is the growth of tiny collections of inflammatory cells (granulomas) in different parts of [the] body – most commonly the lungs, lymph nodes, eyes and skin. Doctors believe sarcoidosis results from the body's immune system responding to an unknown substance, most likely something inhaled from the air. There is no cure for sarcoidosis, but most people do very well with little or only modest treatment.  In halve of cases, sarcoidosis goes away on its own.  In a few cases, however, sarcoidosis may last for years and may cause organ damage." Sardoidosis, Overview, Mayo Clinic Staff, http://www.mayoclinic.org/diseases-conditions/sarcoidosis/home/ovc-20177969 (Last accessed February 11, 2016).

illness and that he has not been provided adequate mental health treatment. Id. ¶¶ 53-60. He also contends that he was placed in the Special Management Unit despite his mental illness and that Defendants "should have known" that such confinement would negatively affect his mental state. Id. ¶¶ 63-65.

Named as Defendants are the following USP-Lewisburg staff members and Bureau of Prisons officials: (1) Andrew Edinger, Staff Physician; Kevin Pigos, M.D., Clinical Director; Francis Fasciana, Mid-Level Practitioner; Lawrence Karpen, Ph.D., Chief Psychologist; Kent Cannon, Psy.D., Psychologist; Brent Taggart, Deputy Captain; Jerame Sherman, Lieutenant; J.E. Thomas, Warden; Joseph L. Norwood, Northeast Regional Director of the Bureau of Prisons; and Harrell Watts, Administrator National Inmate Appeals. Id.  Parks has also named as defendants three "John Does." Id.

The case was initially dismissed under the "three strikes" provision of the Prison Litigation Reform Act, 28 U.S.C. § 1915(g), without prejudice to refiling if Parks paid the full filing fee.  On February

3

27, 2014, after an appeal, the case was reopened, Parks'
motions for leave to proceed in forma pauperis were
construed as motions to proceed without full prepayment
of fees and costs and granted, and the United States
Marshal directed to serve the complaint on the
Defendants named therein.

On July 10, 2013, a standing practice order was
issued which advised Parks of his obligations under
several Local Rules of Court, including Local Rules 7.6
and 56.1. Local Rule 7.6 requires that an individual
opposing a motion must file a brief in opposition within
14 days of the filing of the brief in support of the
motion and Rule 56.1 relating to motions for summary
judgment provides that "all material facts set forth in
the statement . . . served by the moving party will be
deemed admitted unless controverted by [a response
filed] by the opposing party."

On June 9, 2014, Defendants filed a motion to
dismiss and/or for summary judgement. Doc. 22. On June
26, 2014, Defendants filed a brief in support of the

motion and a statement of material facts in accordance with Local Rule 56.1.  Docs. 28 & 29.

Defendants make the following arguments: (1) Parks failed to exhaust his administrative remedies with respect to his claim that he was denied treatment for his sarcoidosis; (2) Parks failed to allege sufficient personal involvement of Defendants Thomas, Taggart, Sherman, Norwood and Watts; (3) the claims against Thomas, Taggart, Sherman, Norwood and Watts should be dismissed because they are not medical providers; (4) the claims against Defendant Watts and the "John Doe" defendants should be dismissed because the court lacks personal jurisdiction over them; and (5) Parks' complaint should be dismissed because the allegations are insufficient to state a claim of deliberate indifference, or in the alternative, summary judgment should be entered in favor of the Defendants with respect to those claims.

Attached to Defendants' statement of material facts were 21 exhibits consisting of over 1000 pages. Doc. 28.  The exhibits include BOP records regarding

grievances and administrative appeals filed by Parks as well as Parks's medical and mental health records.

Parks' brief in opposition to Defendants' motion to dismiss and/or for summary judgment along with a response to Defendants' statement of material facts was due on July 14, 2014.  On July 30, 2014, Parks filed a motion for extension of time to file a brief in opposition. Doc. 35.  On August 5, 2014, the court granted Parks a *nunc pro tunc* extension of time until September 30, 2014, to file a brief in opposition to Defendants' motion as well as a response to Defendants' statement of material facts. Doc. 36.  Subsequently, Parks filed 7 motions for extension of time.  The most recent was filed on October 27, 2015. Doc. 57.  On November 4, 2015, the court granted Parks a *nunc pro tunc* extension of time until December 12, 2015. Doc. 58.

Instead of complying with the order of November 4, 2015, by filing a brief in opposition and a response to Defendants' statement of material facts, Parks on December 29, 2015, filed a motion to seal the exhibits which were attached to the Defendants' statement of material facts. Doc. 59.  Because the Defendants' motion

to dismiss and/or for summary judgment along with the statement of material facts and over 1000 pages of exhibits had been in the public domain for over a year and half, the court discerned no reason to seal the exhibits attached to Defendants' statement of material facts. Consequently, the court on January 11, 2016, denied the motion to seal. Doc. 61.

Furthermore, the court directed Parks to file a brief in opposition to Defendants' motion to dismiss and/or for summary judgment as well as a response to Defendants' statement of material within 20 days, i.e. February 4, 2016, which gave Parks three extra days for mailing. Id. Parks was further advised that when responding to the Defendants' statement of material facts he should either admit or deny each numbered paragraph and if he denied a paragraph he was required to point to an exhibit, either an affidavit or other item of evidence in the record, supporting the denial. Id. Finally, Parks was warned that if he failed to respond to the numbered paragraphs set forth in the Defendants' statement of material facts, the paragraphs would be deemed admitted. Id.

Again failing to comply with a court order, Parks on February 1, 2016, filed a document entitled "Plaintiff's Opposition Motion to Defendants' Motion to Dismiss and/or Summary Judgment, and Counter Claim for Summary Judgment." Doc. 63.  The document consists of one rambling paragraph and neither addresses Defendants' arguments nor responds to Defendants' statement of material facts. <u>Id.</u>  Defendants's statement of material facts will, therefore, be deemed admitted and for the reasons set forth below, the Defendants' motion to dismiss and/or for summary judgment will be construed as one for summary judgment and granted.[3]

**<u>Summary Judgment</u>**

---

[3]. The "John Does" have not been identified or served by Parks. It is well-settled that the use of John/Jane Doe defendants absent compelling reasons will not suffice and the district court may dismiss such defendants if plaintiff, after being granted a reasonable period of discovery, fails to identify the defendants. <u>Sheetz v. Morning Call</u>, 130 F.R.D. 34 (E.D. Pa. 1990).  Based on this court's review of the record, although his action was filed over 2 ½ years ago, Parks has not yet provided this court with the identities of the John Doe defendants.  Furthermore, in light of the pending motion to dismiss and/or for summary judgment filed by the named defendants and the court's disposition of that motion, no further opportunity to identify the "John Doe" defendants will be granted.

Federal Rule of Civil Procedure 56(a) requires the court to render summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(a).  "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original).

A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law.  Anderson, 477 U.S. at 248; Gray v. York Newspapers, Inc., 957 F.2d 1070, 1078 (3d Cir. 1992).  An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  Anderson, 477 U.S. at 257; Brenner v. Local 514, United Brotherhood of Carpenters and Joiners of America, 927 F.2d 1283, 1287-88 (3d Cir. 1991).

When determining whether there is a genuine issue of material fact, the court must view the facts and all reasonable inferences in favor of the nonmoving party. Moore v. Tartler, 986 F.2d 682 (3d Cir. 1993); Clement v. Consolidated Rail Corporation, 963 F.2d 599, 600 (3d Cir. 1992); White v. Westinghouse Electric Company, 862 F.2d 56, 59 (3d Cir. 1988). In order to avoid summary judgment, however, the nonmoving party may not rest on the unsubstantiated allegations of his or her pleadings. When the party seeking summary judgment satisfies its burden under Rule 56 of identifying evidence which demonstrates the absence of a genuine issue of material fact, the nonmoving party is required by Rule 56 to go beyond the pleadings with affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue. Celotex Corporation v. Catrett, 477 U.S. 317, 324 (1986). The party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Electric Industrial Co. v. Zenith Radio, 475 U.S. 574, 586 (1986). When Rule 56 shifts the burden of

10

production to the nonmoving party, that party must produce evidence to show the existence of every element essential to its case which it bears the burden of proving at trial, for "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 323.  See Harter v. G.A.F. Corp., 967 F.2d 846, 851 (3d Cir. 1992).

**III.    Statement of Facts**

Local Rule 56.1 states in toto as follows:

A motion for summary judgment filed pursuant to Fed.R.Civ.P. 56, shall be accompanied by a separate, short and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried.

The papers opposing a motion for summary judgment shall include a separate, short and concise statement of the material facts, responding to the numbered paragraph set forth in the statement required in the foregoing paragraph; as to which it is contended that there exists a genuine issue to be tried.

Statement of material facts in support of, or in opposition to, a motion shall include references to the parts of the record that support the statements.

> All material facts set forth in the statement
> required to be served by the moving party will
> be deemed to be admitted unless controverted by
> the statement required to be served by the
> opposing party.

M.D. Pa. LR 56.1 (emphasis added).  As stated above a
standard practice order was issued on July 10, 2013,
2012, which advised Parks of the requirements of several
Local Rules of Court, including Local Rule 56.1. Doc. 7.
Furthermore, he was specifically directed to comply with
that provision in the order of November 4, 2015.

On June 26, 2014, the Defendants filed a
statement of material facts in accordance with Local
Rule 56.1 along with evidentiary materials.  Docs. 28
and 28-1 through 28-21.  The Defendants' statement
consists of 73 numbered paragraphs and each paragraph
refers to parts of the record or sections of the Code of
Federal Regulation which support the paragraph. Id.

The first 8 paragraphs of Defendants' statement
of material facts essentially mirror the allegations of
Parks' complaint.

Paragraphs 9 through 15 outline the Bureau of
Prisons' administrative remedy procedures. 28 C.F.R. §§
542.10 through 542.19.  The Federal Bureau of Prisons
has a 4-level administrative remedy process (i.e.,
informal, institutional, regional and central office
resolution of his complaint).  Initially an inmate is
required to attempt to informally resolve his complaint
with prison staff within 20 days of the events giving
rise to the complaint and this informal process has to
be concluded before an inmate goes onto the next step
and submits a Request for Administrative Remedy to the
Warden of the institution. 28 C.F.R. § 542.13(a).  An
inmate has 20 days from the denial of an informal
request to submit an Administrative Remedy Request (form
BP-9) to the Warden. 28 C.F.R. 542.14(a). If the warden
denies the complaint at the institutional level, the
inmate has 20 days to submit an Appeal (form BP-10) to
the appropriate Regional Director.  28 C.F.R. §
542.15(a).  Finally, if the inmate is dissatisfied with
the Regional Director's decision, the inmate has 30 days

to submit and Appeal (form BP-11) to the General Counsel at the Central Office of the BOP. Id.

Starting with paragraph 16, Section B entitled "Facts Regarding Exhaustion" Defendants' statement of material facts states as follows:

16. Since his incarceration with the BOP, Parks has filed 376 administrative remedies – 92 of which were filed since his 2011 arrival at USP Lewisburg through the filing of the instant Complaint. (Declaration of Jennifer Knepper (Ex.1) ¶ 4; SENTRY Report, Administrative Remedy Generalized Retrieval (Attach. B to Ex 1) pp. 1-47.)

17. Each administrative remedy is given a number upon submission. (Knepper Decl. (Ex. 1) ¶ 5.)

18. Each number is then followed by a letter representing the level that particular remedy was filed at, and a number to indicate how many times that remedy was filed at that level. (Id.)

19. The institution level is represented by "F", the letter "R" is used for the regional office, and the BOP's Central Office is represented by the letter "A". (Id.)

20. During the relevant time periods, Parks exhausted the following administrative remedies concerning his medical and mental health treatment, and the effect of chemical munitions on his health:

14

a. Administrative Remedy Identification Number 690779, alleging delayed medical treatment for an injury to his hand occurring on April 28, 2012. Knepper Decl.(Ex.1)¶6; Administrative Remedy 690779 (Attach. C to Ex.1).)

b. Administrative Remedy Identification Number 699499 concerning the use of chemical munitions endangering his life. (Knepper Decl. (Ex. 1)¶6; Administrative Remedy 699499 (Attach. D to Ex. 1).)

c. Administrative Remedy Identification Number 690775 complaining of cell-side psychological treatment. (Knepper Decl. (Ex. 1)¶6; Administrative Remedy 690775 (Attach. E to Ex. 1.)

d. Administrative Remedy Identification Number 730368 complaining of denial of mental health medication. (Knepper Decl. (Ex. 1); Administrative Remedy 730368 (Attach E to Ex. 1).)

21. Parks has not exhausted his claim that Defendants have failed to treat his sarcoidosis. (Knepper Decl. (Ex. 1)¶7; SENTRY Report Administrative Remedy Generalized Retrieval (Attach. B to ex. 1).)

Doc. 28, Statement of Material Facts, ¶¶ 16-21.

The next 11 paragraphs (22 through 32) fall under a section entitled "Facts Regarding Personal

15

Involvement of Defendant Watts."  These paragraphs in sum reveal that Defendant Watts is the Administrator of National Inmate Appeals but his responsibilities are primarily "general supervisory management and oversight of the operation of the BOP's review and response to Central Office Administrative Remedy Appeals;" Defendant Watts' only involvement in this matter was to review and sign the Central Office responses to Parks' administrative remedy appeals; and Defendant Watts does not reside, work or own real property with the State of Pennsylvania.

The next section of the statement of material facts consisting of 15 paragraphs (33 through 47) is entitled "Fact Regarding Chemical Munitions and Medical Treatment."  This section reveals that Parks is diagnosed with pulmonary sarcoidosis which afflicts the lower respiratory system; the asthma condition which Parks alleges he has is actually sarcoidosis; chemical munitions are an upper respiratory irritant; Parks is prescribed daily medication and an albuterol inhaler for

16

acute breathing problem attacks; the cell blocks are routinely patrolled by staff and there is a sufficient number of officers assigned to a unit that should an inmate need assistance he can easily obtain the attention of a staff member; each inmate assigned to the SMU has a cellmate who, if the inmate himself is unable to request assistance, could make such a request; medical personnel also make daily rounds of the housing units; although Parks claims that he was denied medical care for inhaling gas from a use of force incident on June 13, 2012, his medical records only reveal an incident on July 2, 2013, and an incident on October 23, 2013; with respect to the July 2nd incident Parks was immediately seen by medical personnel who determined that his lung capacity was not decreased but he exhibited tightness in his throat but those symptoms resolved with the use of his albuterol inhaler; and with respect to the October 23 incident Parks merely complained of "some wheezing" and since that date has made no complaints.

17

In paragraphs 48 through 53 under the heading
"Facts Regarding Parks' placement at USP Lewisburg SMU"
the Defendants indicate that BOP institutions are each
given a number based on the level of medical care they
are able to provide an inmate and that inmates are also
given a number based on their medical needs and then
each inmate is assigned to the appropriate institution;
the level requiring the least amount of care is level
one, with level four typically being a medical center;
the same scale is used for mental health needs; Parks is
a medical care level two inmate, meaning he is stable
but has chronic medical issues; and Parks was
appropriately housed at USP-Lewisburg which is a medical
care level two facility.

Paragraphs 54 through 61 under the heading
"Facts concerning treatment of Parks' sarcoidosis"
revealed that Parks has been examined and treated
multiple times at USP-Lewisburg; his treatment has been
complicated by significant noncompliance issues relating
to prescribed medications; he has at times been

noncompliant with laboratory testing routinely given
while taking medications even so he continued to be
treated; several of Parks' afflicted areas have shown
improvement; and he has also been provided with over-
the-counter pain medication on a regular basis.

       The last section of Defendants' statement of
material facts consisting of 12 paragraphs (62-73) is
entitled "Facts concerning Parks' mental health
treatment" and reveals that mental health BOP staff
believe inmate Parks is "malingering and using his
mental health as an avenue to seek out specific
medications;" Parks believes that he has mental health
needs but has shown no evidence of mental illness; Parks
is designated a mental health care level 2 inmate but
has a "lengthy history of feigning mental illness for
secondary gain;" after arriving at USP-Lewisburg, Parks
exhibited no signs of mental illness and was
reclassified as a mental health care level 1 inmate on
August 12, 2013; Parks' current mental health diagnosis
is Malingering and Antisocial Personality Disorder and

he is not on any psychotropic medications; although
Parks has no serious mental health problems, he is
monitored by mental health staff; Parks was monitored
every thirty days by a psychologist while in the SMU;
and although Parks complained about being denied privacy
by the use of cell-side counseling, he was able to
request more private counseling and he could address any
issues in writing with staff.

## Discussion

The Defendants initially argue that Parks failed
to exhaust his administrative remedies with respect to
his claim that he was denied medical treatment for
sarcoidosis.  Under the Prison Litigation Reform Act
("PLRA"), exhaustion of administrative remedies is
required for all actions concerning prison conditions
brought under federal law.  See 42 U.S.C. § 1997e(a);
Woodford v. Ngo, 126 S.Ct. 2378 (2006).  The "exhaustion
requirement applies to all inmate suits about prison
life, whether they involve general circumstances or
particular episodes, and whether they allege excessive

force or some other wrong." <u>Porter v. Nussle</u>, 534 U.S. 516, 532 (2002); <u>Booth v. Churner</u>, 532 U.S. 731, 741 n. 6 (2001) ("[A]n inmate must exhaust irrespective of the forms of relief sought and offered through administrative avenues."). "[I]t is beyond the power of [any] court ... to excuse compliance with the exhaustion requirement." <u>Nyhuis v. Reno</u>, 204 F.3d 65, 73 (3d Cir. 2000). The PLRA also mandates that inmates "properly" exhaust administrative remedies before filing suit in federal court. <u>Woodford</u>, 126 S.Ct. at 2387. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." <u>Id</u>. at 2386. Failure to substantially comply with procedural requirements of the applicable prison's grievance system will result in a procedural default of the claim. <u>Spruill v. Gillis</u>, 372 F.3d 218, 227-32 (3d Cir. 2004). The BOP's procedural requirements

for the exhaustion of administrative remedies have been outlined above. 28 C.F.R. §§ 542.10-542.19.

    With respect to Parks' allegations of inadequate medical treatment and medical accommodations, the Eighth Amendment "requires prison officials to provide basic medical treatment to those whom it has incarcerated." Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999). In order to establish a claim under Bivens based on the Eighth Amendment, an inmate must allege acts or omissions by prison officials sufficiently harmful to evidence deliberate indifference to a serious medical need.  See Spruill v. Gillis, 372 F.3d 218, 235 (3d Cir. 2004); Natale v. Camden Cty. Correctional Facility, 318 F.3d 575, 582 (3d Cir. 2003). In the context of medical care, the relevant inquiry is whether the defendant was: (1) deliberately indifferent (the subjective element) to (2) plaintiff's serious medical needs (the objective element).  Farmer v. Brennan, 511 U.S. 825 (1994); Monmouth County Correctional Institution Inmates v. Lanzaro, 834 F.2d 326, 346 (3d Cir. 1987); West v. Keve,

571 F.2d 158, 161 (3d Cir. 1979).  Because only
egregious acts or omissions can violate this standard,
mere medical malpractice can not result in an Eighth
Amendment violation, nor can disagreements over a prison
physician's medical judgment.  White v. Napoleon, 897
F.2d 103, 108-10 (3d Cir. 1990).

A complaint that a physician or a medical
department "has been negligent in diagnosing or treating
a medical condition does not state a valid claim of
medical mistreatment under the Eighth Amendment..."
Estelle v. Gamble, 429 U.S. 97, 106, (1976).  "A medical
decision not to order an X-ray, or like measures, does
not represent cruel and unusual punishment.  At most it
is medical malpractice."  Id., 429 U.S. at 107.
"Allegations of medical malpractice are not sufficient
to establish a Constitutional violation."  Spruill, 372
F.3d at 235.  "[A]s long as a physician exercises
professional judgment his behavior will not violate a
prisoner's constitutional rights."  Brown v. Borough of
Chambersburg, 903 F.2d 274, 278 (3d Cir. 1990).  In sum,

negligence, unsuccessful medical treatment, or medical malpractice do not give rise to a § 1983 cause of action, and an inmate's disagreement with medical treatment is insufficient to establish deliberate indifference.  See Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993).

A mere difference of opinion between the prison's medical staff and the inmate regarding the diagnosis or treatment which the inmate receives does not support a claim of cruel and unusual punishment. Farmer v. Carlson, 685 F. Supp. 1335, 1339 (M.D. Pa. 1988).  See McCracken v. Jones, 562 F.2d 22, 24 (10th Cir. 1977); Smart v. Villar, 547 F.2d 112, 113 (10th Cir. 1976), cert. denied, 450 U.S. 1041 (1981).

Additionally, if there is a dispute over the adequacy of the received treatment, courts have consistently been reluctant to second guess the medical judgment of the attending physician.  Little v. Lycoming County, 912 F. Supp. 809, 815 (M.D. Pa.), aff'd, 101 F.3d 691 (3d Cir. 1996).  The key question is whether

24

the defendant has provided the plaintiff with some type
of treatment, regardless of whether it is what the
plaintiff desires.  Farmer v. Carlson, 685 F. Supp. at
1339.

The objective component of an Eighth Amendment
claim, i.e., whether a plaintiff's medical needs were
serious, has its roots in contemporary standards of
decency.  Hudson v. McMillian, 503 U.S. 1 (1992).  A
medical need is serious if it is one that has been
diagnosed by a physician as mandating treatment or is
one that is so obvious that even a lay person would
easily recognize the necessity for a doctor's attention.
Johnson v. Busby, 953 F.2d 349, 351 (8th Cir. 1991);
Monmouth County Correctional Institution Inmates v.
Lanzaro, 834 F.2d at 347; Ramos v. Lamm, 639 F.2d 559,
575 (10th Cir. 1980), cert. denied, 450 U.S. 1041
(1981); West vs. Keve, 571 F.2d at 162-63 n.6.  The
serious medical need element contemplates a condition of
urgency, one that may produce death, degeneration, or
extreme pain.  See Monmouth County Correctional

Institution Inmates v. Lanzaro, 834 F.2d at 347; Archer v. Dutcher, 733 F.2d 14, 16-17 (2d Cir. 1984); Todaro v. Ward, 565 F.2d 48, 52 (2d Cir. 1977).

As for Parks' claim that his Eighth Amendment rights were violated by exposure to environmental contaminants, the deliberate indifference standard is, likewise, applicable.  In the context of the prison environment, "extreme deprivations are required to make out a conditions-of-confinement claim." Hudson v. McMillian, 503 U.S. at 9.  Part of the penalty facing those who violate the norms of society is routine discomfort.  Id.; Rhodes v. Chapman, 452 U.S. 337, 346 (1981).  The Eighth Amendment does not require that inmates be provided with comfortable prisons.  Rhodes, 452 U.S. at 349; Loe v. Wilkinson, 604 F. Supp. 130, 133-34 (M.D. Pa. 1984).  To determine whether conditions of confinement are in violation of the Eighth Amendment, a court must look at the totality of the circumstances. Tillery v. Owens, 907 F.2d 418, 426 (3d Cir. 1990).

In light of the Defendants' statement of material facts and evidentiary materials, it is clear that Parks has failed to exhaust his available administrative remedies with respect to his claim that he was denied treatment for his sarcoidosis. Furthermore, assuming, without deciding, that Parks' medical condition is serious in the constitutional sense, there is no evidence in the record from which a jury could reasonably conclude that Parks failed to receive adequate medical care for sarcoidosis or any other physical or mental condition while housed in the SMU at USP-Lewisburg.  Moreover, there is no evidence from which a jury could reasonably conclude that any of the named Defendants were deliberately indifferent to his medical or mental health needs. The summary judgment record amply demonstrates that Parks received treatment for his conditions and no jury could reasonably conclude otherwise.

Defendants argue that Parks has failed to allege sufficient personal involvement or point to evidence of

such involvement of Defendants Thomas, Norwood and
Watts.  This argument has substantial merit.

A person seeking to recover damages under
"Bivens" must satisfy three requirements; he must: (1)
assert that a constitutionally protected right has been
violated; (2) state a cause of action sufficient to
invoke the general federal question jurisdiction of the
district court; and (3) demonstrate why money damages
are the appropriate form of relief.  See Muhammad v.
Carlson, 739 F.2d 122, 123-4 (3d Cir. 1984).

Moreover, in addressing whether a viable claim
has been stated against a defendant the court must
assess whether Parks has sufficiently alleged personal
involvement of the defendant in the acts which he claims
violated his rights.  Liability may not be imposed under
Bivens on the traditional standards of respondeat
superior. Capone v. Marinelli, 868 F.2d 102, 106 (3d
Cir. 1989)(citing Hampton v. Holmesburg Prison
Officials, 546 F.2d 1017, 1082 (3d Cir. 1976)).  In
Capone, the court noted "that supervisory personnel are

only liable for the § 1983 violations of their subordinates if they knew of, participated in or acquiesced in such conduct." 868 F.2d at 106 n.7.

With respect to defendants Thomas, Norwood and Watts the court discerns no allegations in the complaint or evidence in the summary judgment record that they were involved in any conduct which violated Parks' constitutional rights. There only involvement was with respect to the handling of Parks' grievances and appeals relating thereto.  Such involvement is insufficient as a matter of law to render those defendants liable.  "[T]he failure of a prison official to act favorably on an inmate's grievance is not itself a constitutional violation." Rauso v. Vaughn, Civil No. 96-6977, 2000 WL 873285, at *16 (E.D.Pa., June 26, 2000). See also Overholt v. Unibase Data Entry, Inc., 221 F.3d 1335 (Table), 2000 WL 799760, at *3 (6th Cir.2000) ("The defendants were not obligated to 'properly' respond to Overholt's grievances because there is no inherent constitutional right to an effective prison grievance

29

procedure. Hence, his allegations that the defendants did not properly respond to his grievances simply do not rise to the level of a constitutional violation.") (citations omitted); <u>Mitchell v. Keane</u>, 974 F.Supp. 332, 343 (S.D.N.Y.1997) ("it appears from the submissions before the court that Mitchell filed grievances, had them referred to a prison official, and received a letter reporting that there was no evidence to substantiate his complaints. Mitchell's dissatisfaction with this response does not constitute a cause of action."); <u>Caldwell v. Beard</u>, Civil No. 2:07-CV-727, 2008 WL 2887810, at *4 (W.D.Pa. July 23, 2008) ("Such a premise for liability [i.e., for performing a role in the grievance process] fails as a matter of law."), aff'd,--- Fed.Appx. ----, 2009 WL 1111545 (3d Cir. April 27, 2009); <u>Caldwell v. Hall</u>, Civil No. 97-8069, 2000 WL 343229, at *2 (E.D.Pa. March 31, 2000) ("The failure of a prison official to act favorably on an inmate's grievance is not itself a constitutional violation."); <u>Orrs v. Comings</u>, Civil No. 92-6442, 1993 WL 418361, at

*2 (E.D.Pa. Oct.13, 1993) ("But an allegation that a
defendant failed to act on a grievance or complaint does
not state a Section 1983 claim."); <u>Jefferson v. Wolfe</u>,
Civil No. 04-44, 2006 WL 1947721, at *17 (W.D. Pa. July
11, 2006) ("These allegations [of denying grievances or
grievance appeals] are insufficient to establish such
Defendants' personal involvement in the challenged
conduct under Section 1983. <u>See</u> <u>Watkins v. Horn</u>, 1997 WL
566080 at * 4 (E.D.Pa..[sic] 1997) (concurrence in an
administrative appeal process is not sufficient to
establish personal involvement)"). Consequently, summary
judgment will be granted in favor of Defendants Thomas,
Norwood and Watts.

Furthermore, there are limitations on bringing a
civil rights claim on the basis of improper medical
treatment against non-medical prison personnel.
Generally, such individuals are not liable for medical
mistreatment or non-treatment once a prisoner is under
the care of medical personnel. <u>Spruil</u>, 372 F.3d at 236.
To fulfill the requirement that non-medical defendants

were deliberately indifferent to an inmate's serious medical needs, the plaintiff must establish that the non-medical defendants had reason to believe or actually knew that prison doctors or their assistants were mistreating or not treating the plaintiff.[4] Id.

Defendants Thomas, Taggart, Sherman, Norwood and Watts are not medical care providers.  Parks has failed to present evidence from which a jury could reasonably conclude that any of those non-medical defendants had a reason to believe or actually knew that prison doctors or their assistants were mistreating or not treating him.  Consequently, summary judgment will be granted in their favor.[5]

---

4.  Deliberate indifference can involve (1) denying reasonable requests for medical treatment that results in undue suffering or the threat of tangible residual injury; (2) delaying necessary medical treatment for non-medical reasons; or (3) providing an easier and less efficacious treatment to the inmate. Monmouth County Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 346 (3d Cir. 1987).

5.  Defendant Watts has also argued that this court lacks personal jurisdiction over him and the "John Doe" As for the "John Doe" Defendants the court

(continued...)

Finally, the Defendants argue that summary judgment should be entered in their favor with respect to Parks' conditions-of-confinement claims.  Parks' conditions-of-confinement claims appear two-fold: (1) the alleged exposure to environmental contaminants, and (2) being counseled by mental health staff at his cell door. The court has sufficiently addressed these claims above. Based on the undisputed statement of facts and the evidentiary materials submitted by the Defendants, no jury could reasonably conclude that Parks was subjected to the extreme conditions warranting a finding that his rights under the Eighth Amendment were violated.

---

5.  (...continued)
agrees.  However, because Watts has cited no case precedent from this Circuit the court is not convinced that the it lacks personal jurisdiction over Watts and in light of the court's disposition of Defendants' motion the issue is moot.

An appropriate order will be entered.


    s/Sylvia H. Rambo
SYLVIA H. RAMBO
United States District Judge


Dated: February 19, 2016